J-A29032-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| CHARLES J. ODGERS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STACEY ANNE ODGERS, | : | |
| | : | |
| Appellant | : | No. 873 EDA 2017 |

Appeal from the Order Entered February 2, 2017
in the Court of Common Pleas of Chester County
Domestic Relations at No(s): 2011-11448-DI

| | | |
|---|---|---|
| CHARLES J. ODGERS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| STACEY ANNE ODGERS, | : | |
| | : | |
| Appellee | : | No. 996 EDA 2017 |

Appeal from the Order Entered February 2, 2017
in the Court of Common Pleas of Chester County
Domestic Relations at No(s): 2011-11448-DI

BEFORE:    LAZARUS, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JANUARY 03, 2018**

In these consolidated cross-appeals, Stacey Anne Odgers (Wife) and

Charles J. Odgers (Husband) challenge different aspects of the trial court's

determination that Husband's alimony obligation to Wife ended on April 18,

2016, based upon Wife's cohabitation.  We affirm in part, reverse in part, and

remand with instructions.

*Retired Senior Judge assigned to the Superior Court.

The parties were married on June 13, 1992. Husband filed a Complaint in Divorce on October 18, 2011. On August 31, 2013 the parties entered into a written property settlement agreement (hereinafter "the Agreement"). The Agreement was filed on October 22, 2013. A final decree in divorce was entered November 6, 2013, which incorporated the Agreement. Paragraph II(B) of the Agreement provides that "Husband shall pay Wife alimony of $8,300.00 per month for 60 consecutive months effective September 1, 2013. The alimony shall be nonmodifiable as to duration; provided however that the alimony shall terminate earlier than August 31, 2018, on the death, remarriage or cohabitation (as defined by law) of Wife or on the death of Husband provided he has complied with the insurance provisions of this Agreement."

In his petition for termination of alimony, Husband alleged that alimony should be terminated as per the terms of the Agreement due to Wife's cohabitating with her boyfriend, Christopher Bernardine (hereinafter "Mr. Bernardine"). Th[e trial] court found that Husband presented sufficient evidence to prove cohabitation "as defined by law." The effective date ordered for termination of alimony was April 18, 2016, the date Husband filed his petition for termination.

Trial Court Opinion, 4/24/2017, at 2 (unnecessary capitalization omitted).

Wife timely filed a notice of appeal, and Husband timely filed a cross-appeal. Both parties and the trial court complied with Pa.R.A.P. 1925. The questions before us are whether Husband offered sufficient evidence of Wife's cohabitation to terminate alimony, and, if so, whether the trial court set the proper effective date.

"In reviewing alimony orders, we review only to determine whether there has been an error of law or abuse of discretion by the trial court. An abuse of discretion entails a misapplication of the law or a manifestly unreasonable judgment in light of the record." **Lobaugh v. Lobaugh**, 753

A.2d 834, 835 (Pa. Super. 2000) (citation and internal quotation marks omitted).

> Where, as herein, a property settlement agreement did not merge into the divorce decree, it stands as a separate contract, is subject to the law governing contracts and is to be reviewed as any other contract. …
>
> When construing agreements involving clear and unambiguous terms, a trial court need only examine the writing itself to give effect to the parties' understanding. A court may not modify the plain meaning of the words under the guise of interpretation. In addition, this Court must consider such contracts without reference to matters outside of the document, and we must ascertain the parties' intentions when entering into the contract from the entire instrument. …

*Crispo v. Crispo*, 909 A.2d 308, 312-13 (Pa. Super. 2006) (internal citations and quotation marks omitted).

The relevant provision of the parties' Agreement in the instant case is as follows. "Husband shall pay Wife alimony of $8,300 per month for 60 consecutive months effective September 1, 2013. The alimony shall be nonmodifiable as to duration; provided however that the alimony shall terminate earlier than August 31, 2018 on the death, remarriage or cohabitation (as defined by law) of Wife…." Agreement, 10/22/2013, at ¶ II(B). The agreement is to be construed pursuant to the law of Pennsylvania. *Id.* at ¶ VI(I).

Under Pennsylvania law, cohabitation exists when two people reside together "in the manner of" spouses, "mutually assuming those rights and

duties usually attendant upon the marriage relationship." ***Miller v. Miller***,

508 A.2d 550, 554 (Pa. Super. 1986).

> Cohabitation may be shown by evidence of financial, social, and sexual interdependence, by a sharing of the same residence, and by other means. Where, upon proof by a preponderance of the evidence, the trier of fact concludes that the dependent former spouse has entered into a relationship with "a [person] who is not a member of the petitioner's immediate family within the degrees of consanguinity" and the two have assumed the rights, duties, and obligations attendant to the marital relationship, the dependent former spouse is no longer entitled to receive alimony from the other former spouse. An occasional sexual liaison, however, does not constitute cohabitation.

***Id.*** (citation omitted).

Wife contends that the evidence does not support a finding of cohabitation. Wife's Brief at 8-13. We begin with the trial court's findings. The trial court offered the following analysis of the relevant factors, relying upon factual findings that are supported by the record.

> Wife and Mr. Bernardine each testified and acknowledged both the sexual and the social interdependence aspects of their relationship. Both Wife and Mr. Bernardine testified frankly as to the sexual nature of their relationship. As to the social aspect of their relationship, Wife and Mr. Bernardine spend various ordinary, holiday and vacation time with one another's children. Mr. Bernardine is particularly close with Wife's daughters. Mr. Bernardine testified that Wife has accompanied him on business trips. They have also taken trips alone together as well as family vacations with their children. Wife testified that she and Mr. Bernardine attend social events together. Consistent testimony was given that Wife and Mr. Bernardine share a bedroom and make no effort to conceal this fact from either their children or other family members/friends that have accompanied them on trips.

As to financial interdependence and residing together, this court found that the evidence and testimony supported a finding of both. There are two properties that are potential domiciles for Wife and Mr. Bernardine together, Wife's admitted domicile in Berwyn, Pennsylvania (the former marital residence) and Mr. Bernardine's now[-]admitted domicile in Avalon, New Jersey. Mr. Bernardine travels extensively for business and for that reason spends many nights away from either residence. Therefore, those nights were not relevant from an evidentiary standpoint as to whether he and Wife cohabitate. Considering in totality the remaining nights, or those that he would have spent at either residence while not traveling for business, the [trial] court found that the majority are spent overnight with Wife, either in Berwyn or in Avalon during the summers. The court was not persuaded by any of the testimony regarding Mr. Bernardine's alleged residence with his brother in Malvern.

Mr. Bernardine testified that in purchasing the Avalon home in 2015, he was $20,000 "short" at the time of closing. Wife's father loaned Mr. Bernardine the $20,000 he needed for closing, purportedly in exchange for Mr. Bernardine entering into a tenants in common agreement with Wife that gave her a 3.2% undivided interest in the Avalon property. Wife's father's name does not appear anywhere in the real estate transfer documents. Wife and Mr. Bernardine are both listed as the borrowers on the Mortgage for the Avalon property. Additionally, Wife and Mr. Bernardine are both prominently displayed as the grantees on the first page of the Deed to the Avalon property. Both identified, once again at the beginning of page one of the deed, the Bodine Road Berwyn property address as their mutual residence at the time of the transfer. The settlement statement (HUD-1) for the Avalon property also indicates that both Wife and Mr. Bernardine are the borrowers and again lists their shared address as the Berwyn property.

Wife and Mr. Bernardine both testified that Mr. Bernardine's dog remains with Wife most of the time he is traveling for work. A passing reference was made to the dog also being boarded at a kennel for some of Mr. Bernardine's travel time, but the [trial] court did not find this testimony convincing. Both Wife and Mr. Bernardine also testified that he has stored his car and his motorcycle(s) at the Berywn residence. Mr. Bernardine also keeps

clothing at the Berwyn residence and Wife keeps clothing and personal items at the Avalon residence.

As further evidence of some degree of financial interdependence, when Mr. Bernardine was purchasing the Avalon property, Wife actually wrote and tendered the initial deposit check. Wife testified that she pays half of the flood insurance and the entire water bill for the Avalon property and that Mr. Bernardine pays all the other bills. The names of both Wife and Mr. Bernardine appear on the water bill and their address is once again listed as the Berywn property.

Trial Court Opinion, 4/24/2017, at 5-7 (citations and unnecessary capitalization omitted). From these facts, the trial court

determined that Wife and Mr. Bernardine are socially, sexually, and at least somewhat financially interdependent. Further, they reside together in a manner similar to husband and wife, just as any typical married couple with a job (or jobs) requiring significant business travel. The facts show the relationship to be significantly beyond the "occasional sexual liaison," *see Miller*, that would not constitute cohabitation. Wife and Mr. Bernardine are not two individuals who are simply dating with each maintaining one of two truly separate residences, as is generally found in the body of case law wherein Pennsylvania courts denied cohabitation. Instead, they appear to be two individuals substantially living together and sharing the interdependent, mutual benefit of two properties, one house and one shore house. …

*Id.* at 7-8.

In contesting the trial court's ruling, Wife attacks the evidence as to each separate factor in isolation, instead of offering a persuasive argument that the trial court erred in determining that an examination of the relationship as a whole amounts to cohabitation. For example, Wife first contends that there was "no competent evidence of sexual interdependence," claiming that,

although "there is no denying that there has been a sexual relationship," they have "taken breaks from each other." Wife's Brief at 8-9.

The fact that the sexual relations of Wife and Mr. Bernardine do not take place without interruption in no way negates a finding of cohabitation. While evidence of a sexual relationship is insufficient to constitute cohabitation in and if itself, *see*, *e.g.*, *Lobaugh*, 753 A.2d at 836, we agree with the trial court that the testimony here is consistent with people acting "in the manner of" spouses. *Miller*, 508 A.2d at 554.

Next, Wife maintains that there was insufficient evidence to establish social interdependence. Wife's Brief at 9. She notes that "Mr. Bernardine does not discipline Wife's children, and they refer to him by his first name as 'Chris.'" *Id.* Wife also observes that she and Mr. Bernardine do not share a computer or know each other's passcodes. *Id.* Further, Wife points to an absence of evidence that she and Mr. Bernardine "hold themselves out as anything more than boyfriend and girlfriend," noting that they have neither discussed marriage nor consider themselves engaged. *Id.*

Wife's arguments are unpersuasive. In this technological age, many if not most adults, including spouses, have their own computers and devices. Furthermore, we are not persuaded that the interactions between Mr. Bernardine and Wife's teenage daughters is distinguishable from those typical to children that age and a stepparent.

With her latter points, Wife appears to conflate the old standards for common law marriage with the social interdependence necessary to support a finding of cohabitation. *See*, *e.g.*, *Canute v. Canute*, 557 A.2d 772, 774 (Pa. Super. 1989) ("Cohabitation of a man and woman, both of whom are capable of contracting marriage, **and** a reputation as husband and wife in their community together raise a presumption that the parties have contracted marriage." (emphasis added)). The facts cited by the trial court (*i.e.*, spending holidays with each other's families, travelling together as a couple and for family vacations, and attending social functions as a couple) are consistent with the social interdependence of spouses.

Wife's next contention is that there was "no competent evidence of financial interdependence." Wife's Brief at 10-11. Similar to her prior issues, Wife here points out facts that establish that she and Mr. Bernardine do not have total and complete financial interdependence: they do not have joint bank accounts or credit cards, they file individual tax returns,[1] and they do not provide financial assistance to each other. *Id.* at 10. However, those facts neither are inconsistent with the behavior of 21st century spouses, nor serve to negate the facts that Wife and Mr. Bernardine co-own the Avalon home, and share some bills for the Avalon and Berwyn residences. The trial court correctly found that there is some measure of financial interdependence.

_____

[1] Since they are not married, it would be illegal for them to file joint tax returns.

Finally, Wife claims that the evidence does not show shared residency, pointing to testimony that shows that Mr. Bernardine does not live at Wife's residence. Wife's Brief at 11-12. Specifically, she notes that Mr. Bernardine does not do chores at the house, keeps no toiletries there, and "constantly travels for business." *Id.* at 11. Once again, Wife's pointing out that the evidence of cohabitation could be stronger does not establish that it is not strong enough. The trial court properly gave weight to the testimony that Mr. Bernardine spends the majority of the nights in which he is not traveling for business with Wife, either at the Berwyn or Avalon home, that Mr. Bernardine keeps vehicles and his dog at the Berwyn home when he travels, and that they both have clothing at both residences.

In sum, Wife argues that the trial court's finding of cohabitation is "contrary to case law" when the various factors are examined "in the context of the existing cases." Wife's Brief at 13. However, she cites no case that conflicts with the trial court's holding; she merely distinguishes one Superior Court decision and one Chester County common pleas court decision.[2] *Id.*

---

[2] The Superior Court case is **Lobaugh**. In that case, this Court affirmed a finding of cohabitation, even though there was no evidence of a sexual relationship, where, for four months while the wife's paramour recovered from an illness, the paramour and wife shared a bedroom, had meals together, attended church together, and paid for some of each other's bills. **Lobaugh**, 753 A.2d at 837. While, in contrast with Mr. Bernardine, Mrs. Lobaugh's paramour did not utilize a separate residence during the time he stayed with her, the other indicia of interdependence in the instant case are more substantial.

Looking at the totality of the circumstances of Wife's relationship with Mr. Bernardine, we conclude that the trial court committed no error of law or abuse of discretion in holding that Wife is cohabiting with Mr. Bernardine. Accordingly, we affirm that portion of the trial court's February 2, 2017 order that terminated alimony pursuant to paragraph II(B) of the Agreement.

We now turn to Husband's contention that the trial court erred in setting the effective date of the termination as April 18, 2017, which was the day Husband filed his petition. Husband argues that the trial court misapplied the law in so holding, failing to give effect to the clear and unambiguous terms of the Agreement. Husband's Brief at 11-12.

In setting April 18, 2017, as the termination date for Husband's alimony obligation, the trial court relied upon the law applicable to modification or termination of court-ordered spousal support. *See* Trial Court Opinion, 4/24/2017, at 10 (citing *Purdue v. Purdue*, 580 A.2d 1146 (Pa. Super. 1990)). However, as noted above, because Husband's alimony obligation was established by an agreement that was incorporated but not merged into the divorce decree, the question of its termination "is subject to the law governing contracts and is to be reviewed as any other contract." *Crispo*, 909 A.2d at 313. Accordingly, the trial court's application of law governing court-ordered support rather than contract law was erroneous.

The relevant principles of contract law are found in the following section of the Restatement (Second) of the Law of Contracts.

- 10 -

**§ 230 Event that Terminates a Duty**

(1) Except as stated in [s]ubsection (2), if under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance or one to pay damages for breach, that duty is discharged if the event occurs.

(2) The obligor's duty is not discharged if occurrence of the event

(a) is the result of a breach by the obligor of his duty of good faith and fair dealing, or

(b) could not have been prevented because of impracticability and continuance of the duty does not subject the obligor to a materially increased burden.

(3) The obligor's duty is not discharged if, before the event occurs, the obligor promises to perform the duty even if the event occurs and does not revoke his promise before the obligee materially changes his position in reliance on it.

Restatement (Second) of Contracts § 230 (1981).

Here, paragraph II(B) of the Agreement provides that Husband's duty to pay alimony is discharged in the event of Wife's cohabitation. Clearly, subsection (2) is inapplicable to Wife's decision to cohabit with Mr. Bernardine. Further, the record is devoid of evidence that Husband promised Wife that he would continue paying alimony even if she began cohabiting with someone, let alone that Wife materially changed her position in reliance on any such promise. Therefore, subsection (1) controls, providing that Husband's duty terminated when Wife's cohabitation began.

Husband asks this Court to hold that the cohabitation began in July 2015, when Wife and Mr. Bernardine purchased the Avalon residence.

- 11 -

Husband's Brief at 13, 14. However, we decline to make that factual finding in the first instance. **Accord Heard v. Heard**, 614 A.2d 255, 260 (Pa. Super. 1992) ("On appeal, it is not the duty of this court to find facts…."). Rather, we vacate the portion of the February 2, 2017 order that set April 18, 2016, as the effective date of termination, and remand for the trial court to (1) determine when Wife's cohabitation with Mr. Bernardine began, and (2) set that date as the date upon which Husband's alimony obligation terminated.

Order affirmed in part and reversed in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 1/3/2018