J-A05035-19

2019 PA Super 133

| | | |
|---|---|---|
| BETH ANNE F. WEBER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| MARK D. WEBER | : | |
| v. | : | No. 1095 WDA 2018 |
| MICHAEL WEBER | : | |
| APPEAL OF:  MICHAEL WEBER | : | |

Appeal from the Order Dated July 5, 2018
In the Court of Common Pleas of Crawford County Civil Division at No(s):
AD No. 1999-1298

BEFORE:  GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

CONCURRING AND DISSENTING OPINION BY SHOGAN, J.:
**FILED APRIL 26, 2019**

I concur with the Majority's conclusion that the trial court erred in determining that the settlement agreement in this case was not a continuing contract.  I respectfully dissent, however, from the conclusion that the applicable statute of limitations began to run in 2011 and would reverse the grant of summary judgment.

The Majority opinion explains the factual and procedural history and dispute in this case; therefore, I confine my disagreement solely to the interpretation the Majority advances in favor of affirmance.  The Memorandum

of Agreement ("Agreement") entered into in 1999 by Mark D. Weber ("Father") and Beth Anne F. Weber ("Mother)[1] on behalf of Michael Weber ("Son") and his sister provided, in pertinent part, as follows:

> 18. <u>POST SECONDARY EDUCATION</u>: Parents shall share equally the reasonable costs of an appropriate undergraduate college **or other post-secondary education** for the children.

Agreement, 11/10/99, at ¶ 18 (emphasis added). I find myself at odds with the Majority's alignment with the trial court that the phrase, "other post-secondary education," equates only to Son's credits while attending Florida State University ("FSU"). Majority Opinion at 6 ("Son's contractual relationship with Father ended in 2011 when he completed his studies at FSU") (citing Memorandum and Order, 7/5/18, at 4–5 n.6).

The trial court, in reaching its conclusion, acknowledged the possibility of ambiguity in this provision. *See* Memorandum and Order, 7/5/18, at 4 n.6 ("Even if the phrase were considered to be ambiguous as to the parents' intentions, [Paragraph 18] does not include graduate school or professional level training."). For support, the trial court cited *delCastillo v. delCastillo*, 617 A.2d 26, 29 (Pa. Super. 1992). The *delCastillo* Court, and indeed the trial court herein, relied upon the statement in *Brown v. Brown*, 474 A.2d 1168 (Pa. Super. 1984), that the term "college" referred "only to undergraduate study leading to a bachelor's degree." *delCastillo*, 617 A.2d at 524 (citing *Brown*, 474 A.2d at 1170). The trial court reasoned, and based

---

[1] Mother and Father divorced in March of 2000.

on this, the Majority agrees, that in the instant case the parents' obligation under the Agreement therefore ended when Son completed his prerequisites for his pharmacy major at FSU. Majority Opinion at 6. This matter, however does not involve the interpretation of the word "college." **Brown** and **delCastillo** are distinguishable, in my view.

Herein, the Majority loses sight of the fact that the instant trial court was not interpreting the meaning or reach of the term "college," as was the court in **delCastillo**. Rather, in their Agreement, Mother and Father utilized the phrase "or other post-secondary education," **in the disjunctive**, from the term "college." The Majority acknowledges that we are bound to give "or" its normal disjunctive meaning, Majority Opinion at 9, but nevertheless ignores and modifies the plain meaning of the words under the guise of interpretation. **Because** the provision was written in the disjunctive, if Mother and Father desired to limit the phrase "other post-secondary education" to "college" or some other undergraduate-limited term, Paragraph 18 of the Agreement could have been qualified in any number of ways: limiting it to a four-year term, providing for its expiration upon the children's attainment of a certain age, actually inserting the word "undergraduate" after use of the disjunctive "or," or any other myriad limitations. **No limitations** were placed on this ambiguous phrase.

In his answer to interrogatories, Son explained he "did not earn an undergraduate degree. At the time that he had earned sufficient

undergraduate credits for admission to the pharmacy program, Son enrolled in Palm Beach Atlantic University," and he "received a Doctor of Pharmacy from Palm Beach Atlantic University." Father's Motion for Summary Judgment, Exhibit 11, Answers, Responses and Objections to Interrogatories, #1, 12. In exhibits attached to an Affidavit that Son filed in the trial court, the United States Department of Education explains that the degree required for a pharmacist, Pharm.D., requires at least two years of preparatory "college work" prior to entering the program and a total of at least six academic years of "college work" to complete the degree program." Response and Brief in Opposition to [Father's] Motion for Summary Judgment, 5/16/18, at Exhibit B, "Structure of the U.S. Education System: First-Professional Degrees." I cannot agree that Son's completion of the prerequisites for his pharmacy degree, and not the years of study for the degree itself, were Mother's and Father's only obligation under Paragraph 18 of the Agreement as it is written. Indeed, the terms Son used to describe portions of the pharmacy degree as undergraduate or graduate are irrelevant, in my view, to whether Son's six-year pharmacy degree may be classified as "other post-secondary education."

The Majority equates Son's argument that his pharmacy degree should be considered "post secondary education," Son's Brief at 19, with a contention that the degree should be considered "his undergraduate studies." Majority Opinion at 10. The nuance of the comparison should not be lost in this manner. Rather, Son contends that the Agreement's requirement that his

parents equally share the reasonable costs of "post-secondary education" includes his expenses in obtaining his pharmacy degree. Son's Brief at 19. Merriam-Webster defines "postsecondary" as "of, relating to, or being education following secondary school." Merriam-Webster's online dictionary (11th ed.), Merriam-Webster, n.d. Web (May 15, 2018). Pennsylvania law, in the Public School Code of 1949, utilizes secondary school interchangeably with high school. 24 P.S. § 16-1613(d). Clearly, the plain language meaning of "post-secondary education," as utilized in Paragraph 18 of the Agreement, is expansive, rather than limiting.

I also disagree with the Majority's concurrence with the trial court's application of the statute of limitations to bar Son's contract claim, Majority Opinion at 2, and the conclusion that "any breach of Paragraph 18 would have occurred, at the latest, 'in 2011 when [Son] completed his studies at FSU.'" Majority Opinion at 15 (citing Memorandum and Order, 7/5/18, at 9). The trial court determined, and the Majority agrees, that Son's Petition for Special Relief to Enforce Marital Settlement Agreement filed April 1, 2016, is barred by the relevant statute of limitations,[2] which was the position advanced by Father in his Motion for Summary Judgment filed April 26, 2018. My reading of the applicable law and review of the entire record, instead, compels the conclusion that the statute of limitations did not begin to run until 2015, when

---

[2] An action upon a contract generally must be commenced within four years. 42 Pa.C.S. § 5525(a)(8).

Son completed his pharmacy degree. ***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007) ("Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary **as the appellate court may review the entire record in making its decision**.") (emphasis added).

There is no disagreement that the law of contracts governs marital settlement agreements. ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004); ***Kraisinger***, 928 A.2d at 339. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." ***Kraisinger***, 928 A.2d at 339. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion. ***Id.***

The Majority, while citing and acknowledging Son's reliance on ***Crispo v. Crispo***, 909 A.2d 308 (Pa. Super. 2006), and the trial court's rejection of it, instead relies upon ***K.A.R. v. T.G.L.***, 107 A.3d 770 (Pa. Super. 2014). Majority Opinion at 15–16. As the Majority explains, ***Crispo*** involved the parties' 1995 property settlement agreement that provided, *inter alia*, that the wife would defer the husband's obligation to pay her $22,500 for her interest in his business, providing the husband did not seek a decrease of the then-current child support order. If the husband filed a petition to decrease his court-ordered child support, he would pay the wife $22,500 within thirty days of his filing of the petition. ***Crispo***, 909 A.2d at 309. In 2004, the wife filed

a petition for special relief, arguing that the husband failed to comply with the agreement. *Id.* at 309. The husband responded that her claims were barred by the statute of limitations, but the trial court disagreed. *Id.* at 310.

On appeal, this Court affirmed, concluding that the agreement was a **continuing contract**, **and therefore, the statute of limitations did not apply**. *Crispo*, 909 A.2d at 312-314 (emphasis added). We observed that "both parties agreed to assume the payment of certain credit card balances and included no specific deadline by which those debts would be paid." *Id.* at 313. We further determined that the agreement's provision that the husband would pay the wife $22,500 for her interest in his business did "not provide a specific start date for the first installment." *Id.* *See also Miller v. Miller*, 983 A.2d 736, 743 (Pa. Super. 2006) (The parties' post nuptial separation agreement to pay the mortgage, taxes, and insurance on the marital residence was a continuing contract where the agreement "did not set a specific deadline by which to make the payments and did not specify specific amounts owed.").

Similar to *Crispo*, where "the parties agreed to assume the payment of certain credit card balances," Mother and Father, in this case, agreed to pay the Children's "college" **or** "other post-secondary education." *Crispo*, 909 A.2d at 313; Agreement, 11/10/99, at ¶ 18. Also, as in *Crispo*, the Agreement "included no specific deadline by which those [amounts] would be paid." *Crispo*, 909 A.2d at 313–314.

*Crispo's* reliance on *Fina v. Fina*, 737 A.2d 760 (Pa. Super. 1999), is equally pertinent here. In *Fina*, the parties entered into a marital settlement agreement in which the father agreed to be responsible for twenty-five percent of the cost of the college tuition and expenses of the parties' minor children and failed to make those payments for one son. When the mother filed a petition for special relief **nine years later** seeking enforcement of the provision, the trial court found that the father had not breached the agreement based upon the fact that the mother had not demanded payment of those expenses. *Fina*, 737 A.2d at 769. This Court reversed, reasoning that the fact that the mother had not demanded payment for nine years did not alter the fact that the husband breached the agreement. *Id.* at 769. **See also Miller**, 983 A.2d 736 (parties' post-nuptial settlement agreement was a **continuing contract**, where the court found that the agreement did not set a specific deadline by which the husband was to make mortgage payments and did not identify the specific amounts the husband owed).

Here, the trial court and the Majority rely upon **K.A.R.**, 107 A.3d 770, where this Court concluded that the wife's action to enforce the parties' equitable distribution agreement was barred by the statute of limitations. We rejected the claim that the equitable distribution agreement was a continuing contract where the agreement provided that the wife was to receive "45% of the initial million dollars . . . from the sale of stock" held by the husband "if and when it would be sold . . . ." *Id*. at 776. In the present case, the trial

- 8 -

court erroneously grafted this "if and when" language onto the instant Agreement. Memorandum and Order, 7/5/18, at 7. Thus, the Majority correctly concludes that the instant Agreement is a continuing contract, but it incorrectly applies the statute of limitations. Majority Opinion at 16.

I conclude that **Fina** and **Crispo**, instead, are directly applicable to this case. The instant Agreement contains no provision mandating that any payments from Mother or Father are due at any stated time, and it specifically lacks any requirement that Mother's and Father's obligations are limited to four years. Paragraph 18 obligates both Mother and Father to pay equally for their children's college **or** other post-secondary education. Here, that includes the entirety of Son's Pharm.D. degree.

For all of these reasons, I dissent and would reverse the grant of summary judgment in favor of Father.