J-S24018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

DIANE CONRAD
                  Appellant

v.

SHAWN CONRAD

:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1604 MDA 2022

Appeal from the Order Entered October 17, 2022
In the Court of Common Pleas of Berks County Civil Division at No(s):
12-18628

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED: AUGUST 1, 2023**

Diane Conrad (Wife) appeals from the order, entered in the Court of Common Pleas of Berks County, dismissing her counterclaims for constructive trust and attorneys' fees, filed in response to Shawn Conrad's (Husband) petition for special relief.  After our review, we affirm.

The parties married on April 8, 1995, and separated on July 25, 2012. Wife filed for divorce on August 2, 2012.  The Honorable Madelyn S. Fudeman entered a divorce decree on February 5, 2016. The parties' December 2, 2015 post-nuptial agreement (PNA) was incorporated[1] into the parties' divorce decree.  The PNA, dated December 2, 2015, was set forth on the record before divorce master, Louis Shucker, Esquire, as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] The PNA was not merged with the divorce decree.

[Husband's] military pension and his State Police pension will be divided 60 percent to [W]ife and 40 percent to [H]usband. [Husband's] deferred compensation plan will be divided the first [$]30,000 to [H]usband, [and] the remainder of the deferred compensation to be split 50/50 between the parties. [Husband's] Vanguard mutual fund will also be split 60 percent to [W]ife, 40 percent to [H]usband and that will be accomplished within 30 days of today. Wife will keep her Pennsylvania School System Employees Retirement Systems pension 100 percent. . . . The parties shall execute any and all documents necessary to effectuate the terms and conditions of this agreement including the preparation of any Qualified Domestic Relations Orders [QDRO[2]] or any other document necessary to transfer funds to or from the respective retirement accounts.

PNA, 12/2/15, at 2-3, 5.

The PNA required that three QDROs be drafted within 30 days of the December 2, 2015 date. It was not until nearly four years later, however, on June 28, 2019, that the parties entered into a stipulation and agreement (Agreement) for a domestic relations order regarding Husband's Pennsylvania State Employees' Retirement System (SERS) State Police Pension.

The Agreement provides, in part, that Wife (Alternate Payee) would receive 60% of the marital portion of Husband's (Member of SERS) retirement benefit, using the coverture fraction (numerator is SERS Member's years of credited service for the period from date of marriage to date of separation; denominator is total years of Member's service). *Id.* at ¶ 6. Both parties acknowledged that Husband's benefit was in pay status at the time they

---

[2] Generally, a qualified domestic relations order, or QDRO, "creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [a] pension plan." *Getty v. Getty*, 221 A.3d 192, 195 n.4 (Pa. Super. 2019) (citation omitted).

executed the Agreement. *Id.* at ¶ 10. The Agreement also provided that Husband's deferred compensation plan was to be divided so that he would receive the first $30,000.00 and the remainder would be split 50/50 between the parties. Wife received 60% of Husband's Vanguard Mutual Fund, and Wife retained 100% of her Pennsylvania School System Employees Retirement System pension. The Agreement stated that the parties intended the terms of the stipulation and agreement be "approved, adopted and entered as a Domestic Relations Order." *Id.* at ¶ 15. The Honorable J. Benjamin Nevius entered this Agreement as an order. *See* Stipulation and Agreement for the Entry of Domestic Relations Order, 6/28/19.

On February 5, 2021, Husband filed a petition for special relief—motion to vacate decree and/or amend QDRO. On March 18, 2021, Wife filed a response and counterclaim. The matter was continued throughout 2021. Judge Nevius scheduled a hearing for May 5, 2022. The court also directed the parties to file briefs; Husband's brief was due to be filed by June 6, 2022, and Wife's responsive brief was due on July 6, 2022. However, no May 5, 2022 hearing was held. The matter was reassigned to the Honorable Jill Gehman Koestel, who scheduled a conference with counsel for both parties on September 29, 2022. *See* Trial Court Opinion, 12/29/22, at 2. The court noted that the conference did not take place because Husband's counsel was unavailable and because "[b]oth counsel told the [c]ourt the matter could be decided on the briefs and the record." *Id.* at 2 n.5. By order dated October

12, 2022, and filed on October 17, 2022, Judge Koestel dismissed Husband's petition and Wife's counterclaims.

Wife filed this appeal.[3]  Both Wife and the trial court have complied with Pa.R.A.P. 1925. Wife raises the following issue: "Whether the [c]ourt erred/abused its discretion in denying [Wife's] petition without a hearing where [Wife] raised sufficient issues of material fact to entitle [her] to a hearing and/or judgment in her favor?"  Appellant's Brief, at 4.

Our standard of review of a trial court's decision to grant or deny special relief in a divorce action is an abuse of discretion.  ***Conway v. Conway***, 209 A.3d 376, 371 (Pa. Super. 2019).

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration.  Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason.  Similarly, the trial court abuses its discretion if it does not follow legal procedure.

***Id.***, citing ***Prol v. Prol***, 935 A.2d 547, 551-52 (Pa. Super. 2007).

Wife's counterclaim sought a constructive trust to enforce the parties' PNA.  Wife claims Husband withheld at least $50,000.00 of funds to which she was entitled under the PNA, and that the court abused its discretion by deciding the matter without a hearing.  ***See*** Appellant's Brief, at 7.  We find no abuse of discretion.

---

[3] Wife retained new counsel for this appeal.

In Pennsylvania, the law of contracts governs a property agreement if the agreement is not merged into a divorce decree. *Crispo v. Crispo*, 909 A.2d 308, 313 (Pa. Super. 2006) ("property settlement agreements are presumed to be valid and binding upon the parties"). An agreement that is not merged "stands as a separate contract, is subject to the law governing contracts[,] and is to be reviewed as any other contract." *Id.* at 312–13.

> A court may construe or interpret a [marital settlement agreement] as it would a contract, but it has neither the power nor the authority to modify or vary the [agreement] unless there has been fraud, accident[,] or mistake.
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.
>
> Further, where . . . the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself.

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004) (internal citations and quotation marks omitted).

A QDRO effectuates the distribution in that it "creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under [a pension] plan." *Smith v. Smith*, 938 A.2d 246, 248 n.3 (Pa. 2007). *See also supra* n.1. In cases where parties have entered a marital settlement agreement, as in the instant matter, a QDRO merely implements substantive rights already created by the settlement agreement. *Grieve v. Mankey*, 679 A.2d 814 (Pa. Super. 1996) (holding order directing

QDRO did not affect either party's substantive rights but was simply procedural mechanism to effectuate pension entitlement as agreed to by parties).

> In her counterclaim, Wife averred:
>
> Husband admits . . . that he retired from the Pennsylvania State Police, chose the Single Life Annuity option and received an[] undisclosed lump sum. . . . Husband failed to timely notify Wife of the above and continues to refuse to disclose the amount of his "lump sum.["] It is possible, Husband made other withdrawals from retirements accounts which Wife is not yet aware of but may learn through discovery. Wife asks this Honorable Court to establish a constructive trust on the lump sum Husband received including an[y] increase in value for the benefit of Wife consistent with the Agreement of the parties that was incorporated into the [d]ivorce [d]ecree.

Wife's Response and Counterclaim, 3/18/21, at ¶¶ 88-92.

Wife has not raised sufficient issues of material fact to entitle her to either a hearing or judgment in her favor. Wife does not aver that Husband's option election, lump sum withdrawal, or "possible" withdraws, infringed on her entitlement to 60% of the marital share as set forth in the parties' Agreement, which was filed as a QDRO with the Berks County Prothonotary's Office on June 25, 2019.[4] That order provides that

> [t]he equitable distribution portion of the marital property component of [Husband's] retirement benefit [] shall be payable to [Wife] and shall commence as soon as administratively feasible on or about the date [Husband] enters pay status and SERS approves a Domestic Relations Order incorporating this

---

[4] A QDRO with respect to Husband's military pension was also filed on June 25, 2019. A QDRO with respect to Husband's Deferred Compensation Program was filed on October 17, 2019.

Stipulation and Agreement, whichever is later. [Husband] and [Wife] acknowledge that [Husband] has already entered pay status prior to the entry of the Domestic Relations Order, therefore it is understood that **upon approval by SERS of a Domestic Relations Order incorporating this Stipulation and Agreement, SERS will commence payment to [Wife] of any remaining portion of the equitable distribution portion of the marital property component of [Husband's] retirement benefit**[.] . . . **[Husband] and [Wife] acknowledge that [Husband's] benefit is in pay status. At the time of retirement, [Husband] elected to receive an annuity pursuant to the terms of the Maximum Single Life Annuity option.**

Agreement, *supra* at ¶ 7, 10 (emphasis added). Moreover, Wife does not aver in her counterclaim that she did not receive her allocation. Nor does Wife aver any facts that raise an issue with respect to fraud, duress, or misrepresentation with respect to the parties' Agreement or the domestic relations order implementing the parties' rights under that Agreement. *See id.*; *see also* 23 Pa.C.S.A. § 3505(d) (constructive trust for undisclosed assets).[5]

We find no error or abuse of discretion. *Conway*, *supra*. Accordingly, we affirm the trial court's order.

Order affirmed.

_____

[5] We also note that, at this point, Wife has waived her claim since she knew that Husband's pension was in pay status at the time of execution of the June 28, 2019 Agreement, and this acknowledgement was memorialized in the Agreement. Also reflected in the Agreement is Husband's election of an annuity pursuant to the terms of the Maximum Single Life Annuity option, and Wife's marital share was already calculated under the QDRO. As noted above, Wife makes no claim of fraud, misrepresentation, or duress with respect to that Agreement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/01/2023