### Commonwealth ex rel. Makowski v. Makowski, Appellant.

442

Argued September 27, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Moe Henry Hankin*, with him *Perch Percy Hankin* and *Hankin & Hankin*, for appellant.

*Bernard M. Borish*, with him *Maxwell Strawbridge, Abraham L. Freedman, E. Arnold Forrest*, District Attorney, and *Wolf, Block, Schorr & Solis-Cohen*, for appellee.

OPINION BY RENO, J., November 9, 1948:

The parties were married April 22, 1907, and had seven children, four of whom are living. The wife is now 62 and the husband 66 years of age. Their marital life has been frequently suspended by appellant who left his wife on numerous occasions, and there is evidence that he often beat her. During one of their separations, they went to a real estate broker's office where on February 8, 1930, the wife signed the following statement: "Know all men by these presents that I, Antonina Ma-

kowski, for and in consideration of the transfer to me by my husband, Thadeusz Makowski, of his interest in the real estate known as premises 4331 W. Seventeenth Street, and for further good and valuable consideration, do hereby release my said husband from any claim for support which I may have at present or in the future against him."

She testified that they had a joint bank account of $900 which her husband wanted and which the bank refused to pay without her signature. He agreed to give her the Seventeenth Street house, which they held by the entireties, if she would sign the paper. The house was subject to a $5200 mortgage. She testified they were not separated at the time the agreement was signed, but that in 1934 or 1935 he left her for about two months, after which he returned and they lived together until March 6, 1947. In 1934 she realized that she could not keep up the mortgage payments from her earnings as a seamstress, and attempted to have it refinanced but could not do so without her husband's signature. She petitioned the Common Pleas Court of Philadelphia County for a certificate as a feme sole trader, and was so declared on February 23, 1935. The house was sold in 1944, and she received $687.18 from the sale.

The parties lived together for about five years on a farm which the husband bought. She used part of her own funds to make improvements. They sold the farm in 1946 and the husband took title to a house in Willow Grove which was frequently referred to as their "old age home". She left him in March 1947 after he had threatened to kill her. The wife then brought proceedings under the Act of June 24, 1939, P. L. 872, §733, 18 PS §4733, for support. The court directed the husband to pay $15 a week for her support, and after appellant's exceptions were dismissed, he took this appeal.

Appellant's testimony differs from his wife's. He contends they were separated at the time of the 1930 agreement and remained apart seven years. He denied

that he had beat his wife. He was contradicted by their married daughter, 27 years of age, and their son, 37 years, who testified appellant frequently fought with their mother. They testified their mother and father lived together after 1930, except for short periods when he would leave her.

Appellant contends the agreement is a bar to any proceedings by his wife for support. He argues that this was a postnuptial agreement and therefore not abrogated by the subsequent reconciliation and cohabitation, and that the parties intended by the agreement to settle their property rights both as to the present and for the future.

In the leading case, *Ray's Estate,* 304 Pa. 421, 156 A. 64, the Supreme Court had to determine whether the litigated agreement was a definite and final postnuptial settlement or a separation agreement. The Court found five factors which indicated a postnuptial agreement: (1) It was a final settlement and determination of the rights of the parties; (2) the husband set aside the substantial sum of $85,000 for his wife and child; (3) he created an irrevocable trust; (4) he completely executed his part of the agreement; and (5) changed his will, since he had provided for his wife and daughter by the agreement.

The words of the agreement in the instant appeal, "do hereby release my said husband from any claim for support which I may have at present or in the future against him" cannot be construed as a final determination of the rights of the parties. The wife only waived her right to support, she has not relinquished her dower rights or her right to take against the husband's will in case of death.

Whether an agreement constitutes a postnuptial agreement or merely a separation settlement will depend upon the intent of the parties as gathered from all the facts. Where they desire to settle and determine their respective property rights finally and for all time

it should be construed as a postnuptial agreement. Such agreements are recognized where they are reasonable and there is no concealment or coercion. *Singer's Estate,* 233 Pa. 55, 81 A. 898; *Mary Ann Slagle's Appeal,* 294 Pa. 442, 144 A. 426. The subsequent reconciliation of the parties does not abrogate such agreement. *Ray's Estate,* supra. However, the agreement upon which appellant relies was patently not intended as a postnuptial agreement. It is not a full and final agreement determining the separate rights of the said parties thereto. It was merely a surrender of the wife's right to support in consideration for the husband giving her the sole title to their home. We need not discuss the question of whether the release was obtained by fraud or the reasonableness of the consideration. We find the agreement was at the most a simple separation agreement.

A separation agreement generally provides for a separation and for the wife's support during that separation, and subsequent reconciliation and cohabitation presumably ends the deed of separation. *Henkel's Estate,* 59 Pa. Superior Ct. 633. Whether the parties have abandoned their contract is a question of intent as determined from their statements, their conduct and all surrounding circumstances. *Ray's Estate,* supra; *Zlotziver v. Zlotziver,* 355 Pa. 299, 49 A. 2d 779.

The real question therefore is whether there was a resumption of the marital relationship and renewal by the husband of his obligation of support so as to abrogate the agreement. The fact the wife was declared a feme sole trader is of no importance as she acted in this capacity only as to the particular property on 17th Street. It does not show an intention by the wife to release her husband of his duty to support her. The purpose of the certificate of a feme sole trader is not to relieve the husband of his duty to support the wife, and its effect is overcome by their subsequent reconciliation. *Flanagan's Estate,* 59 Pa. Superior Ct. 61.

The husband admits he returned to his wife and supported her from 1937 to 1947. The wife states they always lived together after the agreement of 1930 except for short periods of time. She testified the parties spoke of the farm house which they acquired after 1940 as their old age home. Clearly the parties intended to resume their marital relationship and the husband reassumed his obligation of support. The wife's release of her right to support had been abrogated, and is not a bar in this proceeding.

Order affirmed.