757 A.2d 909

**Sara J. VACCARELLO, Appellee,**

v.

**Joseph VACCARELLO, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1999.

Decided Aug. 28, 2000.

Kenneth J. Horoho, Harry J. Gruener, Pittsburgh, for Joseph Vaccarello.

Robert Raphael, Melaine Shannon Rothey, Pittsburgh, for Sara J. Vaccarello.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NEWMAN, Justice.

We granted allocatur in this matter to determine whether the parties' "Separation and Property Settlement Agreement" (Agreement) dated April 22, 1981, is valid and enforceable in light of their subsequent reconciliation. Because the Agree-

ment is both valid and enforceable, we reverse the Superior Court and remand for further proceedings.

## Facts and Procedural History

Sara Vaccarello (Wife) and Joseph Vaccarello, Jr. (Husband) were married on November 7, 1964, and are the parents of four children, all of whom are now emancipated. They separated in March of 1981, when Husband moved out of the marital residence. On April 22, 1981, they signed a "Separation and Property Settlement Agreement", which states in the introduction that "the parties ... have been living separate and apart, and further, have decided to settle and finally determine for all times their mutual property rights, matters of alimony, support and inheritance." Pursuant to the Agreement, the parties, *inter alia*, relinquished their inchoate intestate rights to each other's estate; agreed that Wife would have "general custody" of the children, with Husband to have "reasonable and proper visitation and/or partial custody"; and set Husband's support obligations for the children.

The Agreement also provided that Husband would deed to Wife, by general warranty deed, all of his right, title and interest in the residences located at 156 Colonial Village Drive and 160 Colonial Village Drive, Pittsburgh, Pennsylvania. Wife would provide for the maintenance of the 160 Colonial Village Drive residence and pay the insurance for the property. Husband would pay monthly mortgage payments on the 160 Colonial Village Drive residence. The approximate balance of the mortgage was $11,000.00. Wife would deed to Husband, by general warranty deed, her right, title and interest to certain properties located in the Borough of Plum, Allegheny County. They also agreed to offer for sale their interest in a property located at 217 Stroschein Road in the Borough of Monroeville, Allegheny County, and invest the proceeds in an account for their children's education.

The Agreement further provided that in a divorce action neither party would file a petition for alimony pendente lite, permanent alimony, counsel fees and expenses or equitable distribution of the property, with it being understood and

agreed that their respective rights to all property, assets and consideration as set forth in the Agreement would be in lieu of any claim against the other party. Further, the parties intended that the Agreement was a full and complete settlement and release of any claims. Also, the parties released any claims to assets owned individually in the name of the other party. The parties acknowledged that they were fully aware, after inquiry, of the property and assets owned by the other party. Husband made a disclosure of his "Partnership Dissolution Agreement" and future salary with Penn Landscape and Cement Work. The parties would not contract or incur any debt or liability against the other party. In addition, Husband agreed to pay child support for their four minor children and the medical insurance premiums for the children and Wife unless she remarried or the parties divorced. Husband agreed to maintain insurance policies on his life and to name the parties' children as beneficiaries. Husband would claim the parties' children as dependents for income tax purposes.

In September of 1981, Husband moved back into the marital residence and the parties lived together for almost twelve years before separating in August of 1993. Wife filed a Complaint for Divorce on September 2, 1993, asserting claims for equitable distribution, alimony and counsel fees. Husband filed an Answer and Counterclaim, in which he raised the Agreement as a defense to Wife's claims. The Court of Common Pleas of Allegheny County (trial court) held ten days of hearings, from September 1994 through June 1996, on the validity of the Agreement. On April 30, 1997, the trial court issued an Order and Trial Memorandum in which it determined that the Agreement was a valid and enforceable postnuptial agreement.

Wife filed a timely appeal to the Superior Court, which concluded that the Agreement was a separation agreement that the parties' reconciliation in September of 1981 abrogated.[1] Accordingly, it reversed the trial court and remanded for

---

1. On appeal to the Superior Court, Wife also asserted that the Agreement was invalid and unenforceable because Husband failed to make a full and fair disclosure of the marital assets at the time of the Agree-

further proceedings. Husband then filed a timely petition for allowance of appeal, which this Court granted.

## Discussion

■ The basic issue raised in this case is whether the Agreement is a postnuptial agreement or a separation agreement. The answer "depend[s] upon the intent of the parties as gathered from all of the facts. Where they desire to settle and determine their respective property rights finally and for all time it should be construed as a postnuptial agreement." *Makowski v. Makowski*, 163 Pa.Super. 441, 62 A.2d 71, 72 (1948). A significant consequence of this distinction is that a separation agreement terminates by the subsequent reconciliation of the parties. *In re Ray's Estate*, 304 Pa. 421, 156 A. 64 (1931).

*Ray's Estate* involved W.S. Ray, a man who was married twice and had three children by his first wife and one daughter by his second wife. On September 29, 1928, he and his second wife, Laura, who were living apart, signed a document captioned "Separation Agreement," wherein Laura accepted the terms of an irrevocable trust, in which her husband set apart $85,000.00 for the support of her and their daughter. The agreement provided that it was a release of all claims against her husband, as though the marriage had never taken place. One week later the parties resumed cohabitation. Ray died testate on July 18, 1929, leaving Laura and his four children to survive him. Laura elected to take against his will. The three children from his first marriage filed a responsive petition. The Dauphin County Orphan's Court determined that the separation agreement was in effect at the time of her husband's death, thus precluding her from taking against the will. On appeal to this Court, Laura argued that the reconciliation abrogated the agreement and restored her statutory rights in her husband's estate. We affirmed the decision of the Orphan's Court.

ment. Because the Superior Court determined that the parties' reconciliation abrogated the Agreement, it did not reach this issue.

This Court first looked at the language of the agreement, which stated that Ray and his wife were already "living separate and apart from each other; and it is the desire of both parties to finally and for all time settle and determine their property rights, or rights of support and maintenance, of the party of the second part [the wife] by the party of the first part [the husband], all dower rights or rights in lieu thereof, together with any and all other existing rights between the said parties, growing out of the marriage relation." The Court placed great importance on the fact that Ray transferred $85,000.00 to the trustee for the benefit of his wife and daughter. The words of the agreement, combined with the Ray's complete execution of the terms relating to the creation and funding of the trust, indicated that the agreement accomplished its purpose of settling for all time the parties' property rights. The irrevocable nature of the trust and the fact that Ray completely executed his part of the agreement at once supported this conclusion. The Court noted that the provisions of a separation agreement are usually executory in nature. Such was not the case in *Ray's Estate* because the husband's obligations to his wife terminated upon establishment of the trust. However, the Court cited 30 Corpus Juris, 1058, § 833 for the following proposition:

> A distinction exists between a simple separation agreement containing executory provisions only and a separation agreement making a division and allotment of property and property interests between parties. The question whether a deed is a separation deed or a postnuptial settlement depends on the intention of the parties to be gathered form the terms of the deed.

*Ray's Estate*, 156 A. at 66. The Court also considered the fact that on the same day that the parties signed the agreement, Husband executed a codicil to his will canceling all provisions for the benefit of his wife and their daughter.

 Turning to the instant matter, the trial court first looked to the following specific provisions of the Agreement to determine the parties' intent:

1. The introductory clause provides that the parties "have decided to settle for all times their mutual property rights, matters of alimony, support and inheritance."

2. Paragraph 1 establishes that the parties mutually waive inchoate intestate rights.

3. Paragraph 10 states that "it is intended that the within Agreement be a full and complete settlement and release of any and all claims."

4. Paragraph 18 provides that the "Agreement constitutes the entire understanding between the parties."

5. Paragraph 20 notes that the Agreement is binding upon the "heirs, administrators, executors and assigns of the parties."

The trial court then considered the testimony of Wife's witness, Robert Ament, Esquire, the scrivener who prepared the Agreement. He "testified that both parties wanted a property settlement agreement which comprehensively satisfied and relinquished their property rights under the Divorce Code [of 1980]". Trial Court Opinion at 3. The trial court also heard the testimony of Husband that Wife wanted a full and final resolution of all property issues. "[Wife] wanted everything done finally. She didn't want—she wanted everything done, you know, forever." Trial Transcript, June 3, 1996 at 83. In addition, Husband testified regarding his will (Defendant's Exhibit L), dated September 1, 1983, which provides in Paragraph 5:

I have intentionally failed to make any provision, under this My Last Will and Testament for my Wife Sara J. Vaccarello. The reason that I have made no such provision is that we have reached a full and complete agreement concerning the division of our mutual assets. Accordingly, I would reference the Separation and Property Settlement Agreement, by and between Joseph Vaccarello, Jr. and Sara Vaccarello, dated April 22, 1981.

Husband's witnesses, Mary Zatolla and Nicholas Vaccarello, testified that they had discussions with Wife regarding the finality of the Agreement and its continued existence.

The trial court concluded that the terms of the Agreement "indicate that the parties intend for [it] to be a complete and final property settlement agreement and not a separation agreement, temporary in nature." Trial Court Opinion at 4.

Although *Ray's Estate* does not set forth a complete list of factors to be considered when determining whether an agreement is a property settlement agreement or a separation agreement, it provides a useful framework for analysis. Here, as in *Ray's Estate*, the terms of the Agreement itself, as noted by the trial court, support the determination that the parties intended to settle their property rights for all time. A further consideration in *Ray's Estate* was that Husband created an irrevocable trust and funded it with $85,000. In the instant matter, Wife admits that she and Husband executed the deeds to the properties at 156 Colonial Drive, 160 Colonial Drive and the Plum Borough properties. Although they dispute whether deeds were ever delivered, Husband presented testimony that delivery was effectuated. With regard to the issue of whether the provisions of the Agreement were executed, the trial court noted:

> Pursuant to the agreement, Husband paid off Wife's automobile and paid child support to Wife for the parties' four children. He maintained medical and life insurance as the parties had agreed. Husband paid the monthly mortgage payments on the 160 Colonial Village Drive property in accordance with the agreement. Husband received the proceeds from the sale of one of the Plum Boro properties, once again pursuant to the agreement.

Trial Court Opinion at 6. Accordingly, as in *Ray's Estate*, the Agreement was executed.

The Court in *Ray's Estate* also looked to the fact that the $85,000.00 that Ray used to fund the trust was "a setting apart during Ray's life-time of a fair and just proportion of his property for the benefit of those who would have a legal and moral claim to a substantial share of his property after his death." *Id.* at 66. In the instant matter, Husband agreed to transfer real estate to Wife and assume responsibility for payment of a mortgage, pay the balance due on Wife's vehicle,

support the children, pay for health insurance for Wife and the children, and name the children as beneficiaries of his life insurance.

The *Ray's Estate* Court noted that upon signing the agreement, Ray changed his will to omit his wife and their daughter. Based on this, it concluded that from the date of signing to the day he died, Ray considered the agreement as a postnuptial property settlement agreement rather than a separation agreement to be terminated upon cohabitation. In the instant matter, Husband did not sign a new will until September of 1983, two years after the parties reconciled. Accordingly, while the new will in this case does not indicate Husband's intent on the day he signed the Agreement, it demonstrates that early in the period of reconciliation he considered the Agreement to remain in effect.

We recognize that the Divorce Code of 1929 afforded different rights to the parties in *Ray's Estate* than those provided by the Divorce Code of 1980 to the parties in the instant matter. However, the analysis in *Ray's Estate* for deciding whether an agreement is a separation or property settlement agreement remains valid. Comparing the determination of the trial court with the factors considered in *Ray's Estate*, we cannot say that the trial court erred in characterizing the Agreement here as a property settlement agreement.

■ On appeal, the Superior Court correctly noted that the law of contracts governs marital settlement agreements. *Sorace v. Sorace*, 440 Pa.Super. 75, 655 A.2d 125 (1995). Before analyzing the Agreement, the Court stated:

When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not re-write it to give it a construction in conflict with the accepted and plain meaning of the language used.

*Carosone v. Carosone,* 455 Pa.Super. 450, 688 A.2d 733, *petition for allowance of appeal denied,* 550 Pa. 676, 704 A.2d 633 (1997) (citations omitted). Although the Superior Court recognized the appropriate standard in its memorandum opinion, we believe that it erred in applying it to the instant Agreement. The Superior Court focused its analysis on Paragraph 2, which provides:

It shall be lawful for the Husband and the Wife at all times hereafter to live separate and apart from each other and to reside from time to time at such place or places as they shall deem fit, free from all restraint or interference, either direct or indirect, by each other. Neither party shall molest nor compel the other to cohabit, dwell with, or support the other party by any legal proceeding, except to enforce any rights set forth in the within Agreement.

Based on this language, the Superior Court concluded that it was the intent of the parties that the Agreement would only be effective during the period of separation. However, a careful reading of the provision in question reveals that it in no way requires the parties to live "separate and apart." It merely allows them to do so if they wish. Accordingly, the Superior Court ignored the plain language of the Agreement and added a provision that the parties simply did not include or intend.

The Superior Court bolstered its analysis by analogizing the instant matter to *Carosone.* In *Carosone,* the parties executed a marital settlement agreement on July 9, 1986, which provided that a temporary reconciliation by the parties would not void the agreement. In December of 1986, they reconciled and lived together until the spring of 1993. When the husband filed for divorce, the trial court determined that the agreement was valid, and accordingly his wife could not assert economic claims against him. On appeal, the Superior Court reversed because it determined that the clear purpose of the provision regarding temporary reconciliation was that the agreement would remain binding in the event of a short reconciliation, but would be void if the parties reconciled over a long period of time. The Superior Court in the instant matter recognized that the parties did not provide for a

temporary reconciliation. Nevertheless, it noted that, as in *Carosone*, the parties shared a long reconciliation that was inconsistent with the Agreement. However, finding such inconsistency was error because, as noted, the Agreement did not require the parties to live "separate and apart." Its plain language merely gave them the right to do so. Accordingly, the Superior Court erred in interpreting this provision as meaning that the Agreement was contingent on separation.

Having determined that the Agreement was a separation agreement, the Superior Court next considered whether the parties' reconciliation abrogated it. The Court relied on *Commonwealth ex. rel. DiValerio v. DiValerio*, 169 Pa.Super. 477, 82 A.2d 687, 689 (1951), which holds, "It is always competent for a party to a contract to establish that it was subsequently abandoned as shown by actions of the parties inconsistent with its continued existence." The court noted that Husband's contribution toward installation of a new kitchen and repairs to the residence at 156 Colonial Village Drive, along with paying the property taxes, were inconsistent with the Agreement. However, we agree with Husband that nothing precluded either party from providing financial assistance beyond what was provided for in the Agreement. The Superior Court also considered the resumption of a sexual relationship, Husband's purchase of gifts for Wife and the maintenance of a joint checking account as indications that the parties abandoned the Agreement.[2] Husband notes that although the parties purchased gifts for each other, once they resumed cohabitation each purchased separate gifts for members of

---

2. Although not discussed by the Superior Court, Wife asserts that an agreement prepared by Attorney Ament for Husband in 1983, but never executed by the parties, demonstrates that Husband did not believe that the April 22, 1981 Agreement, which already provided that Husband's businesses were to be his sole and separate property, was binding. The 1983 agreement specifically provides that Wife "discharges any marital interest or the right to seek a marital election against the property or assets of either Joseph Vaccarello, Jr., Inc. or Raymar Equipment Corporation.... The within release is given for the purpose, and with the understanding that Sara J. Vaccarello will have an interest in either of the aforesaid corporations...." Husband asserts that at trial, Wife's witness, Attorney Ament, testified that the unexecuted agreement was business-related only and did not support a theory of abandonment of the 1981 Agreement.

their respective families. Also, evidence at trial established that Wife opened the checking account in her name, and that although Husband's name was later placed on the account, only Wife used it. Furthermore, Husband paid Wife child support, by check, in the bi-weekly amounts set forth in the Agreement; Husband paid his own medical bills, Wife paid the household bills from her personal checking account, and Wife obtained certificates of deposit and savings bonds in her own name. The Superior Court failed to consider these matter when addressing the issue of abandonment of the Agreement.

The Superior Court also noted that "a written contract must be construed as a whole, and the parties' intentions must be ascertained from the entire instrument." *Carosone*, 688 A.2d at 735. Nevertheless, the Superior Court ignored the provisions of the Agreement that the trial court considered when determining the intent of the parties, including the fact that the Agreement states that the parties "have decided to settle and finally determine for all times their mutual property rights, matters of alimony, support and inheritance." In light of the waiver of inchoate intestate rights in Paragraph 1 and the statement in Paragraph 10 that the Agreement is a "full and complete settlement and release of any and all claims," the Superior Court erred in focusing primarily on the "separate and apart" provision of Paragraph 2, which it erroneously interpreted.[3]

### Conclusion

Because the trial court properly determined that the Agreement is a property settlement agreement, and accordingly is

---

**3.** Although not raised in the appellate briefs, counsel for Husband suggested at oral argument that a unique reason existed for including in Paragraph 2 that "It shall be lawful for the Husband and the Wife at all times hereafter to live separate and apart from each other." The parties signed the Agreement on April 22, 1981, less than a year after the effective date of the new Divorce Code, Act of April 2, 1980, P.L. 63, § 101 et seq., 23 P.S. § 101 *et seq.* (effective July 1, 1980). Uncertain as to whether Husband's leaving the marital residence would subject him to a claim of desertion if the Divorce Code had been determined to be unconstitutional, they included the "separate and apart" language. This bolsters Husband's position that it was not the parties' intent for the Agreement to be dependent upon separation.

not abrogated by the reconciliation of the parties, *Ray's Estate, supra,* we reverse the order of the Superior Court. We remand this matter to the Superior Court to address the issue of whether Husband made full and fair disclosure of the marital assets.

Justice NIGRO files a dissenting opinion in which Justice ZAPPALa and SAYLOR join.

NIGRO, Justice, dissenting opinion.

The Majority concludes that the contract at issue is a postnuptial agreement because it finds that when Joseph and Sara Vaccarello entered into their "Separation and Property Settlement Agreement" in April of 1981, a short time after Joseph moved out of the marital home, they intended for that agreement to be binding even in the event that they reconciled their differences and resumed living together as husband and wife. Because I do not believe that the parties intended to enter into a postnuptial agreement, I respectfully dissent.

It is well-settled law in Pennsylvania that a husband and wife are free to determine their property rights and support obligations by contract. *See generally* 15 Summ. Pa. Jur.2d §§ 7.1—7.49 (1994); 23 Pa.C.S. § 3105. When such a contract is executed after the parties' nuptials and is intended to govern their property rights, including their future property rights, it is generally a "postnuptial agreement." [1] When, however, a husband and wife who are about to get a divorce execute a contract which they intend to be contingent on their separation, such a contract is generally a "separation agreement." [2]

1. *See In re Estate of Wagner,* 398 Pa. 531, 538–39, 159 A.2d 495, 499 (1960); *In re Ray's Estate,* 304 Pa. 421, 426, 156 A. 64, 65 (1931); *Wareham v. Wareham,* 716 A.2d 674, 677 (Pa.Super.1998); *Makowski v. Makowski,* 163 Pa.Super. 441, 444–45, 62 A.2d 71, 72 (1948).

2. Black's Law Dictionary defines "separation agreement" as an agreement "concerning custody, child support, alimony and property division made by a married couple who are usually about to get a divorce or legal separation." BLACK'S LAW DICTIONARY 1365 (6 TH ed.1990). Also see the cases cited in note 1, *supra,* for a general

As the Majority correctly observes, one major difference between postnuptial and separation agreements is that separation agreements terminate by the subsequent reconciliation of the parties. *Ray's Estate,* 304 Pa. at 426–29, 156 A. at 65–66; *Makowski,* 163 Pa.Super. at 444–45, 62 A.2d at 72. Whether a contract constitutes a postnuptial agreement or a separation agreement will depend upon the intent of the parties. *Id.* As with any other contract, a court must first look to the clear and unambiguous language of the contract itself in order to interpret what the parties intended. *Carosone v. Carosone,* 455 Pa.Super. 450, 453–54, 688 A.2d 733, 735 (1997) (citing cases).

Here, the parties' April 1981 contract, which was drafted by an attorney, was called a "Separation and Property Settlement Agreement," not a "Postnuptial Agreement." We must presume that the attorney knew how to properly employ terms of art that have been used in this Commonwealth for over half a century. Also, the agreement included terms delineating the custodial rights of the parties with respect to their then-minor children and provided that Joseph would have reasonable visitation privileges. Such terms clearly would be devoid of meaning if the condition of living separate and apart was not fundamental to this agreement. Based on the clear terms of the writing, I believe that the April 1981 contract was a separation agreement.

Nevertheless, I am mindful of the agreement's language, which the Majority finds to be of great import, that states that as a consequence of the differences that have arisen between the parties they have been living separate and apart and have decided to settle and finally determine for all time their mutual property rights, matters of alimony, support and inheritance. I am equally mindful, however, that such language should not be read in a vacuum especially when, as here, at the time the parties executed the agreement they were living separately in anticipation of divorce. In light of these circumstances, I can reach no other conclusion but that the parties

discussion of the differences between postnuptial agreements and separations agreements.

entered into this agreement dividing up their marital property and responsibilities in order to provide for the realistic finality and financial contingencies of divorce. In other words, in determining the intent of the parties, I do not believe the circumstances under which this agreement was created and executed can be ignored.

Since I find the April 1981 contract at issue to be a separation agreement, I also find it null and void as of September 1981 when the parties reconciled. I would therefore affirm the decision of the Superior Court.

Justices ZAPPALA and SAYLOR join in the dissenting opinion.