J-A07017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JODIE E. TEFFETELLER, N/K/A JODIE E. PAYNE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1196 MDA 2020 |
| THOMAS T. TEFFETELLER | : | |

Appeal from the Order Entered August 17, 2020
In the Court of Common Pleas of Cumberland County Civil Division at
No(s):  2010-1232

BEFORE:   BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 09, 2021**

Appellant, Jodie E. Teffeteller, N/K/A Jodie E. Payne ("Wife"), appeals from the August 17, 2020 Order entered in the Cumberland County Civil Division, which, *inter alia*, limited the amount of money that Appellee, Thomas T. Teffeteller ("Husband"), was required to pay towards the college education of the parties' adult son pursuant to their Marital Settlement Agreement ("MSA") and Addendum to MSA Dated August 17, 2010 ("Addendum").  Upon review, we conclude the terms of the MSA and Addendum are unambiguous. The trial court, therefore, erred when it considered extrinsic evidence to determine the parties' intent and modified, rather than enforced, the MSA and Addendum.  Accordingly, we vacate the Order and remand.

_____

[*] Former Justice specially assigned to the Superior Court.

**FACTUAL AND PROCEDURAL HISTORY**

The following procedural and factual history is relevant to this appeal. Wife and Husband were married for almost seventeen years until their divorce on January 11, 2011. The parties have two adult children. The subject of the parties' current dispute is payment of college expenses for their twenty-three-year-old son, Cooper Teffeteller, who is pursuing a career in architecture. The parties entered a MSA on August 17, 2010. In relevant part, the MSA provided:

> **E. COLLEGE EXPENSES.** Husband shall be responsible for seventy-five percent (75%) of the cost of the children's college education, including tuition, room, board, books, application fees, testing, activity fees, reasonable transportation expenses, costs related to PSAT, SAT testing and any other miscellaneous expenses associated with the children's attendance at college. At such time as each child may consider college, the parties agree to confer with each other and the child relative to their college choices and to discuss their respective obligations in this regard.

Wife's Exhibit 1, MSA, at ¶ 8(E). On May 17, 2012, the parties entered an Addendum which stated, in relevant part:

> **4. College Expenses.** The parties acknowledge that paragraph 8(E) of the parties' [MSA] dated August 10, 2017, is hereby amended to the extent that Husband shall be responsible for the cost of each of the children's college education, including tuition, room, board and meal plan in an amount not to exceed 75% of the then current rate of a full-time-out-of-state undergraduate tuition at Penn State University at University Park, after consideration of any scholarships or grants. With respect to each child, in the event there is a remaining balance with respect to the cost of the child's college education, consisting of tuition, room, board, and meal plan, the parties shall divide same in proportion to their respective net incomes.

Wife's Exhibit 2, MSA Addendum, at ¶ 4. Both the MSA and Addendum were incorporated but not merged into the parties' January 11, 2011 Divorce Decree.

In the Fall of 2016, Cooper began attending Harrisburg Area Community College ("HACC") for architecture as part of its accreditation affiliation program with Drexel University. Cooper attended HACC for approximately 2½ years, and Father contributed to expenses associated with HACC, as well expenses that Cooper incurred while spending a summer in Italy and taking a class there. In the Summer of 2019, Drexel University accepted Cooper into its part-time architecture program. Cooper subsequently enrolled and began classes in the Fall of 2020, with an anticipated graduation date in May of 2024, eight years after Cooper initially began pursuing an architecture degree. Husband contributed financially to Cooper's first two semesters at Drexel University.

On May 7, 2020, Wife filed a Petition to Enforce Marital Settlement Agreement and Addendum and Request for Counsel Fees, averring, *inter alia*, that Husband refused to pay further costs for Cooper's education at Drexel University and requesting that the court order Husband to remit payment pursuant to the MSA and Addendum. Wife also requested that the court order Husband to pay her counsel fees. On May 18, 2020, Husband filed an Answer with New Matter averring, *inter alia*, that at time the MSA and Addendum were drafted, the parties intended for Father to contribute financially to four years of Cooper's college education, that he could not afford to pay for eight years

of college education, and that Cooper and Wife refused to discuss Cooper's college choices and the parties' obligations as required by the MSA and Addendum. Wife responded, asserting that neither the MSA nor Amended MSA included language that required Cooper to attend school full-time or placed a time limit on Cooper's education.

On August 10, 2020, the trial court held a hearing. The trial court heard testimony from Wife, Cooper, and Husband. On August 17, 2020[1], the trial court entered an Order that, *inter alia*, ordered Husband to pay for Cooper's tuition room, board, meal plan, parking and books for the 2020-21 school year at Drexel University up to but not including the Fall 2021 quarter, and denied Wife's request for $297 in parking reimbursements. Order, 8/14/20, at ¶1-2. The court ordered that any remaining balance of Cooper's college education should be divided between the parties, with Husband paying two-thirds and Wife paying one-third of all college educations costs. *Id.* at ¶ 3. Finally, the court denied Wife's request for counsel fees. *Id.* at ¶ 6.

Wife timely appealed. Both Wife and the trial court complied with Pa.R.A.P. 1925.

**ISSUES RAISED ON APPEAL**

Wife raises the following issues for our review:

A. Whether the trial court abused its discretion by arbitrarily modifying the terms of the parties' [MSA] and [Amended MSA],

---

[1] The Order is dated August 14, 2020, but the lower court clerk did not enter it on the docket until August 17, 2020.

- 4 -

which terms were clear and unambiguous, and where there was no fraud, misrepresentation, or duress.

B. Whether the trial court erred as a matter of law by failing to consider the parties' [MSA] and Addendum thereto as a contract, subject to enforcement, but not modification by the [c]ourt, in contradiction to the Court's holding in ***Bianchi v. Bianchi***, 859 A.2d 511 (Pa. Super. 2004)?

C. Whether the trial court abused its discretion by modifying the terms of the parties' [MSA] and Addendum thereto with respect to the parties' financial obligations with respect to their son's college-related expenses, despite neither party raising a claim or counterclaim for the modification thereof?

D. Whether the trial court abused its discretion by failing to consider that the terms of the parties' [MSA] and Addendum thereto are part of a comprehensive settlement and bargained-for resolution regarding the equitable distribution of the parties' marital estate and thus, should be viewed as a whole and any modification of a portion thereof constitutes an error of law, impacting the overall terms of the parties' resolution in connection with their divorce matter?

E. Whether the trial court abused its discretion by failing to find that Appellee breached the terms of the parties' [MSA] and Addendum, and thus, denying [Wife] an award of counsel fees pursuant to the terms of the parties' [MSA] and Addendum and pursuant to 23 Pa.C.S.[] § 3502(e)?

Wife's Br. at 6-7.

**LEGAL ANALYSIS**

It is well-settled that "the law of contracts governs marital settlement agreements." ***Vaccarello v. Vaccarello***, 757 A.2d 909, 913 (Pa. 2000). Under the law of contracts, a trial court must ascertain the intent of the parties when interpreting a marital settlement agreement. ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004). "When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document

- 5 -

itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity[.]" ***Id.*** (internal citation omitted). Whether a contract is ambiguous is a question of law and this Court's standard of review is *de novo*. ***Id.*** at 1164 n.5. Consequently, this court is not bound by the trial court's interpretation. ***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007).

## **The Terms of the MSA and Addendum are Clear and Unambiguous**

In her first two issues, Wife avers that the trial court erred when it modified, rather than enforced, the terms of the MSA and Addendum. Wife argues that the terms of the MSA and Addendum were clear and unambiguous, and, therefore, the trial court impermissibly considered parol, or extrinsic, evidence to determine the parties' intent and, consequently, change the terms of the MSA. ***Id.*** at 23. We agree.

As stated above, when "the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself." ***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa. Super. 2004). In determining the intent of the parties, "the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1258 (Pa. Super. 2005) (citation omitted). "If left undefined, the words of a contract are to be given their ordinary meaning." ***Kripp*** 849 A.2d at 1163. "A court may not modify the plain meaning of the words under the guise of interpretation." ***Crispo v. Crispo***, 909 A.2d 308, 313 (Pa. Super. 2006).

- 6 -

Additionally, "this Court must consider such contracts without reference to matters outside of the document, and we must ascertain the parties' intentions when entering into the contract from the entire instrument." **_Id._** The parties are bound "without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." **_Sabad v. Fessenden_**, 825 A.2d 682, 688 (Pa. Super. 2003) (citation omitted). "[A] contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction." **_Metzger v. Clifford Realty Corp._**, 476 A.2d 1, 5 (Pa. Super. 1984) (citation omitted). Simply put, in a written contract, "the intent of the parties is the writing itself." **_Kripp_** 849 A.2d at 1163.

Moreover, while a trial court may interpret a marital settlement agreement as it would a contract, "it has neither the power nor the authority to modify or vary the agreement unless there is conclusive proof of fraud or mistake." **_Crispo_**, 909 A.2d at 313. "The standard of enforceability of a contractual agreement is [] clear: absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." **_Id._** (citation and internal quotation marks omitted).

Instantly, the trial court determined that "the contract is ambiguous as to the parties' intentions" and considered parol evidence to conclude that once Husband paid $106,900 towards Cooper's college education, Husband met his contractual obligation under the terms of the MSA, and any remaining college expense balance should be divided in proportion to the parties' respective

incomes. Trial Ct. Op., dated 11/23/20, at 7-8. The trial court explained its

rationale as follows:

> The cost of four years' worth of tuition to obtain an undergraduate degree for a full-time out-of-state undergraduate student at Penn State University in 2019/2020 equates to $142,056. Applying the 75% cap to that amount equals $106,542. Wife avers that Husband is obliged by contractual agreement to pay eight full years of college expenses resulting in payments upwards of $270,000. This court cannot permit such an absurd result. Therefore, we find that the testimony and the evidence of record supports a finding that [] Husband's payments exceeded 75% of the current rate of a full-time-out-of-state undergraduate tuition at Penn State University Park as stated in the MSA and Addendum. Having determined Husband met his initial college expense obligations, the Addendum requires that the parties divide any remaining college expense balance . . . in proportion to their respective net incomes.

*Id.* We disagree.

Upon review, we conclude that the language of the MSA and Addendum

is clear and unambiguous, and the trial court's interpretation of the parties'

intent is incorrect. In Paragraph 8 of the MSA, the parties expressly state that

"Husband shall be responsible for seventy-five percent (75%) of the cost of

the children's **college education**[.]" Wife's Exhibit 1, MSA, at ¶ 8(E)

(emphasis added). In their amendment to Paragraph 8 of the MSA the parties

agreed, in relevant part, that Husband's obligation is "not to exceed 75% of

the then current rate of a full-time-out-of-state undergraduate tuition at Penn

State University at University Park, after consideration of any scholarships or

grants." Wife's Exhibit 2, MSA Addendum, at ¶ 4. Neither the MSA nor the

Addendum put a limit on the amount of years that Husband is required to

- 8 -

contribute to a child's college education. Rather, the MSA and the Addendum define only the limits of the amount Husband is required to contribute each year. In particular, the Addendum language "then current rate" highlights the parties' intent to define the parameters of Husband's annual obligation. Those words clearly do not express an intent to limit Husband's obligation to a four-year lump sum as the trial court concludes.

Further, the MSA and Addendum unambiguously state that Husband is required to pay for a "college education" and the parties did not expressly include or exclude specific undergraduate degrees from that obligation. College education is varied, with some degrees requiring less than four years and some degrees requiring more. If the parties intended to limit the amount of years that Husband was required to pay, they would have expressly done so in the MSA or, in particular, when they agreed to modify previously agreed upon terms in the Addendum.

This Court must assume that the parties chose the language in the MSA and Addendum carefully, and we must look to what the parties have clearly expressed. Courts may not modify the terms of the agreement under the guise of interpretation. For the foregoing reasons, we conclude the terms of the MSA and Addendum are clear and unambiguous; the trial court, therefore, erred when it considered extrinsic evidence to determine the parties' intent.

Further, we agree with Wife that the trial court erred when it modified, rather than enforced, the MSA and Addendum absent a showing of fraud or duress. Accordingly, we vacate the Order and remand for the trial court to

enforce the terms of the MSA and Addendum in accordance with this Memorandum. In light of our disposition, we decline to address Wife's third and fourth issues.

**Attorney's Fees**

In her final issue, Wife avers that the trial court abused its discretion when it failed to award her attorney's fees pursuant to Paragraph 9 of the Addendum and 23 Pa.C.S. § 3502(e). Wife's Br. at 43, 45-46. Wife argues that Husband breached the MSA and Addendum when he unilaterally stopped making the payments required by both and, therefore, she was entitled to attorney's fees. *Id*. at 46

The Addendum states, in relevant part:

> 9. **Breach.** It is expressly stipulated that if either party fails in the due performance of any of his or her material obligations under this Addendum, the other party shall have the right, at his or her election, to sue for damages for breach thereof, to sue for specific performance, or to seek any other legal remedies as may be available, and the defaulting party shall pay the reasonable legal fees for any services rendered by the non-defaulting party's attorney in any action or proceeding to compel performance hereunder.

Wife's Exhibit 2, MSA Addendum, at ¶ 9. Section 3502 provides, in relevant part, that if "a party has failed to comply . . . with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part . . . award counsel fees and costs[.]" 23 Pa.C.S. § 3502(e)(7).

The plain language of the Addendum provides for the award of attorney's fees if an enforcement proceeding must be brought because either party breaches the MSA and Addendum. The trial court did not award attorney's fees, concluding that "both parties share some responsibility over the reasons that these issues had to be brought before the [c]ourt." Order, 8/17/20, at ¶ 6. In light of our conclusion that the trial court erred in its interpretation of the MSA and Addendum, an award of attorney's fees may be appropriate upon remand.

**CONCLUSION**

In conclusion, the terms of the MSA and Addendum are unambiguous and we, therefore, conclude that the trial court erred when it considered extrinsic evidence to determine the parties' intent and modified, rather than enforced, the MSA and Addendum. The MSA and Addendum clearly and unambiguously put a limit on the amount of money that Husband is required to contribute to the children's college expenses each year, without limiting the number of years that Husband is required to contribute. Accordingly, we vacate the Order and remand for the trial court to enforce the terms of the MSA and Addendum in accordance with this Memorandum and to award attorney's fees, if appropriate.

Order vacated.  Case remanded.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2021