J-A13008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PETRA DINENNA N/K/A PETRA THOMAS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID DINENNA, SR. | : | |
| | : | No. 312 MDA 2022 |
| Appellant | : | |

Appeal from the Order Entered January 14, 2022
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2002-6087C

BEFORE:    BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED: AUGUST 9, 2023**

David DiNenna, Sr. ("Husband") appeals from the order denying (1) his petition for special relief requesting that the trial court determine the amount of his military pension to be distributed to Petra DiNenna n/k/a Petra Thomas ("Wife"), and (2) his exceptions filed in response to a master's report concerning the same issue.  We affirm.

We glean the following facts from the certified record.  Husband began serving in the military in 1987.  He and Wife married in 1992 and separated in 2002, and thereafter initiated divorce proceedings.  In 2005, the trial court appointed a master to address, *inter alia*, equitable distribution of marital property and alimony.  The master held a hearing wherein the sole issue to be addressed was equitable distribution of Husband's military pension.

_____

[*] Former Justice specially assigned to the Superior Court.

Husband and Wife reached an agreement at the hearing, and thus no testimony was taken. The terms of the agreement were put on the record and the transcript was attached as "Exhibit A" to a report prepared by the master.

As articulated by Wife's counsel on the record, the agreement concerning the military pension, in its entirety, stated "Wife to receive [forty-five] percent of [H]usband's military pension, as of his retirement date. If a quatro[1] is necessary, it is to be prepared by pension analysis with the parties sharing the costs of preparation." N.T. Master's Hearing, 11/16/06, at 8. Counsel for both Husband and Wife expressed their consent to this language on the record. *See id*. The master then memorialized the agreement within his report as follows:

> vi. The Plaintiff, Petra DiNenna, the former spouse is awarded [forty-five percent] of the service member's disposable retirement pay as of his retirement date. If a [QDRO] were necessary, it was to be prepared by pension analysis with the parties sharing the cost of preparation. The master researched the issue of the necessity of a QDRO and recommends that the Uniform Services Former Spouses' Protection Act does not require a QDRO. Since military retirement pay is a federal entitlement and not a qualified pension plan, there is no such requirement that a QDRO be used. As long as the award is set forth in the divorce decree or other court order in an acceptable manner, that is sufficient. The Master recommends that the expense of a QDRO not be incurred. Attached to this master's report is a copy of the Uniform Services Former Spouses' Protection Act and a treatise titled Dividing

---

[1] The word "quatro" appears to be an erroneous transcription of the abbreviation "QDRO," short for Qualified Domestic Relations Order. As we will discuss in the body of this memorandum, Husband points to this error as evidence of an ambiguity in the contract.

Military Retired Pay Under the Uniformed Services Former Spouse's Protection Act and they are marked are Exhibits "B" and "C" respectively.

vii. The language to be used in this Divorce Decree is recommended as follows: "The former spouse (Plaintiff, Petra DiNenna) is awarded [forty-five percent] of the member's (Defendant, David DiNenna's) disposable retirement pay as of his retirement date[.]"

Master's Report, 4/23/07, at ¶ 8(B) (cleaned up). Subsequently, a divorce decree was entered in 2007 which stated "[i]t is further ordered, adjudged, and decreed that pursuant to the settlement terms as described in the Master's Report, [Wife] is awarded [forty-five percent] of [Husband]'s disposable retirement pay as of his retirement date." Divorce Decree, 7/5/07 (cleaned up).

Husband continued serving in the military until he retired in 2017. There was no further activity in the divorce portion of this action until 2020, when Husband filed a petition to determine the appropriate division of his pension, arguing that Wife was only entitled to forty-five percent of the marital portion of the pension, not of the entire pension. The trial court appointed another master, Susan A. Maza, Esquire, to address the issues raised in the petition for special relief. Both Husband and Wife participated in an evidentiary hearing before Master Maza and filed memoranda prior to and after the hearing.

Master Maza then filed a report on July 6, 2021, recommending that the agreement was clear and unambiguous, and that Wife was entitled to forty-

five percent of the entire military pension based on the agreement of the parties. Husband filed exceptions to the report. The trial court held oral argument on the exceptions but did not take any additional testimony. On January 14, 2022, the court entered an order that (1) denied Husband's exceptions; (2) found that the parties, in the presence of their attorneys, agreed and consented that Wife is to receive forty-five percent of Husband's military pension, as of his retirement; (3) the agreement was the result of a contractual agreement between the parties, not a court order; and (4) the phrase "Petra Di[N]enna n/k/a Petra Thomas is to receive 45 percent of David Di[N]enna's military pension, as of his retirement date" is clear and unambiguous. *See* Order, 1/14/2022.

This timely appeal followed. Husband and the trial court complied with Pa.R.A.P. 1925. Husband raises the following issue on appeal:

> Whether the trial court committed an error of law and/or an abuse of discretion in finding the contractual terms of the parties['] November 16, 2006 agreement stating [Wife] to receive [forty-five] percent of [Husband]'s total military pension, as of his retirement was clear and unambiguous when there were both patent and latent ambiguities in the agreement?

Husband's brief at 2.

Our review is governed by the following principles:

> A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Rosiecki v. Rosiecki*, 231 A.3d 928, 932-33 (Pa.Super 2020) (cleaned up).

"An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." *Paroly v. Paroly*, 876 A.2d 1061, 1063 (Pa.Super 2005) (citation omitted). "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *See id*. at 1065 (citation omitted).

Husband's assertion that the marital settlement agreement is ambiguous necessarily requires us to interpret a contract. The "paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly." *Wiley v. Brooks*, 263 A.3d 671, 676 (Pa.Super. 2021) (citation omitted). While "construing agreements involving clear and unambiguous terms, this Court need only

examine the writing itself to give effect to the parties' understanding." ***Rosiecki***, ***supra*** at 933 (cleaned up). "In other words, the intent of the parties is generally the writing itself." ***Id***. (citation omitted). "The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." ***Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare***, ___ A.3d ___, 2023 WL 4412195 at *32 (Pa.Super. 2023).

A contract "is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted). "A contract is not ambiguous merely because the parties do not agree on its construction." ***Pass v. Palmiero Automotive of Butler, Inc.***, 229 A.3d 1, 5 (Pa.Super. 2020) (citation omitted). "Nor does an ambiguity exist if it appears that only a lawyer's ingenuity had made the language uncertain." ***Id***. (cleaned up).

When an ambiguity exists, "the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions." ***Rosiecki***, ***supra*** at 933 (citation omitted). The court may take into consideration the "surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." ***Stamerro v. Stamerro***, 889 A.2d 1251, 1258 (Pa.Super. 2005) (citation omitted). "The court will adopt an

interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement." *Id*. (citation omitted).

The contested provision before us, as transcribed at the hearing in front of the master on November 16, 2006, is as follows: "Wife to receive [forty-five] percent of [H]usband's military pension, as of his retirement date. If a quatro is necessary, it is to be prepared by pension analysis with the parties sharing the costs of preparation." N.T. Master's Hearing, 11/16/06, at 8. The agreement was then ultimately memorialized in the divorce decree, which stated: "It is further ordered, adjudged, and decreed that pursuant to the settlement terms as described in the Master's Report, [Wife] is awarded [forty-five percent] of [Husband]'s disposable retirement pay as of his retirement date." Divorce Decree, 7/5/07. We note that the oral agreement utilized the term "military pension," whereas the decree used "disposable retirement pay." Additionally, the decree did not contain a reference to either a "quatro" or a QDRO because, prior to entry of the decree, the master determined that a QDRO is not required for distribution of federal entitlements like the military pension in question. *See* Master's Report, 4/23/07, at ¶ 8(B)(vi).

With this background in mind, we turn to the positions of the parties. Husband first argues that the agreement concerning his military pension is patently ambiguous, and that the intent of the parties was for Wife to receive forty-five percent of the **marital portion** of the military pension, not forty-five percent of the **entire** pension. *See* Husband's brief at 14-17. Specifically,

he contends that the language "[forty-five] percent of husband's military pension" is not clear since it "does not indicate [the] value of the pension which [Wife] is to receive [forty-five] percent of." *Id*. at 16. He highlights that the total value of the pension was different when the agreement was made in 2006 than when he retired in 2017, and similarly, the value of the marital portion in 2006 was different than the total value at the same time. *See id*. at 16-17. He believes that other provisions in the agreement, such as a cash distribution to Wife, specified both a known value and timing of payment, unlike the pension provision, supporting the notion that it is ambiguous. *See id*. at 16. He also accuses the court of failing to review the whole agreement, and instead focusing on a single term. *See id*. at 22, 27. He argues that had the court considered the additional language from the verbal agreement referencing "pension analysis" preparing a "quatro," it would be compelled to find an ambiguity because it is unclear (1) that "quatro" actually meant "QDRO," (2) under what circumstances preparation of a QDRO would be necessary, or (3) how a QDRO might impact Husband's pension. *See id*. at 24-26.

Relatedly, Husband maintains that even if the agreement concerning his military pension is seemingly clear on its face, there is nonetheless a latent ambiguity based on the collateral circumstances surrounding the agreement. *See id*. at 18. He states that the purpose of the hearing before the master was to dispose of marital assets, which would include only the part of his pension earned during the marriage. *See id*. at 18. He believes that a

pension valuation report prepared at the time of the agreement, as well as the fact that the parties understood Husband would continue serving in the military after the divorce, support the intention that Wife receive only forty-five percent of the marital portion of the pension. ***See id*** at 16, 18. Since there is an ambiguity, he avers that the trial court committed an error of law or abused its discretion by failing to conduct its own hearing concerning these issues, rather than relying on a report from the hearing officer without the benefit of the record developed therewith. ***See id***. at 20-21. He notes that although the court had access to Master Maza's 2021 report and recommendation, it did not review the transcript or exhibits, as they were not filed by the master.[2] ***Id***. As such, Husband asks this Court to find an ambiguity as a matter of law and independently review the record to determine that the intent of the parties was for Wife to receive only forty-five percent of the marital portion of his pension. ***See id***. at 27-28.

In considering this issue, the trial court found that the provision regarding Husband's military pension was clear and unambiguous on its face. ***See*** Trial Court Opinion, 6/13/22, at 13. It held that the provision "awards [Wife] forty-five percent (45%) of [Husband]'s disposable retirement pay" and that the phrase "as of his retirement date" is the point at which Wife would be

_____

[2] Our review of the record supports Husband's assertion that Master Maza did not file the record developed before her. The certified record on appeal does not include a transcript of the evidentiary hearing held on April 14, 2021, nor does it contain any exhibits introduced at that hearing. However, given our disposition that the contract in question is clear and unambiguous, *infra*, this omission from the certified record does not hinder our review.

entitled to begin receiving the distribution. *Id*. at 14. It noted that nowhere in the record is the word "marital" used, nor does the agreement utilize any formula to determine Wife's award. *See id*. The court further stated that just because Husband has a different interpretation of the agreement, that does not constitute an ambiguity. *See id*. at 14-16. Finally, the court reviewed Exhibit "B" to the master's report filed in 2007, which contained a handout from the United States Department of Defense website addressing division of military retired pay pursuant to the Uniformed Services Former Spouses' Protection Act. It found that this article provided Husband and Wife with examples of both acceptable and unacceptable language for military pensions under the act. *See id*. at 16-17. The court highlighted that none of the parties objected to the language of the verbal agreement after it was incorporated into the divorce decree, and therefore it is presumed that their intentions were clearly expressed as set forth. *See id*.

Wife agrees with the trial court that the contested agreement regarding Husband's military pension is "clear and unambiguous." Wife's brief at 9. She also challenges the assertion that there is a latent ambiguity, arguing that no consideration should be given to the pension analysis discussed by Husband because it was not incorporated into the agreement or the master's report. *See id*. at 10. She further states that the intent of the parties was for her to receive forty-five percent of Husband's whole military pension, as the military pay was only one asset amongst others considered in the negotiations involving the marital estate. *See id*. at 11. She indicates that the parties

were aware that Husband intended to continue serving in the military, which would impact the pension, and the parties negotiated with that in mind and with the benefit of independent counsel. *See id*. at 10-11. She claims that, at the time of and in consideration of the agreement, she entered into the agreement bearing the risk of receiving nothing in the event Husband died before payout. *See id*. at 6.

After careful review of the certified record, the arguments of the parties, and the applicable law, we conclude that the trial court did not commit an error of law in finding the agreement between Husband and Wife unambiguous. First, we reject Husband's arguments that there was a patent ambiguity on the face of the contract. Like the lower court, we can determine the agreement's meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *See Riverview Carpet*, *supra* at *32. Whether reviewing the agreement as memorialized in the transcript from the master's hearing or the decree itself, the phrase "Wife to receive [forty-five] percent of [H]usband's military pension" or "[Wife] is awarded [forty-five percent] of [Husband's] disposable military pay," means the same thing. The value of the award is forty-five percent of the entire pension. As the trial court correctly identified, there was no use of the word "marital" or phrase "marital portion" in the agreement concerning the pension. Nothing in the language used indicates any intent to limit the obligation to only the marital portion. Without use of such a qualifier, the phrase "[forty-five] percent of [H]usband's miliary

pension" is clearly understood to mean forty-five percent of the whole pension. We further agree with both the trial court and Husband that the phrase "as of his retirement date" refers to when payments to Wife were to begin, and also indicates the triggering event for determination of the amount of payment.

Additionally, review of other portions of the contract do not create an ambiguity concerning the military pension distribution. Use of the word "quatro" in the sentence immediately following that provision does not create an ambiguity as to the value of the pension or its timing of payment. We note that neither this term nor the word "QDRO" were contained within the decree, as the master determined that a QDRO is not applicable to military pensions. Thus, this ancillary provision has no bearing on the distribution or valuation of the military pension whatsoever. Husband does not argue that a QDRO is in fact required to be prepared for distribution of the pension, and he did not challenge the special master's recommendation in 2007 that one was not needed. In the same vein, we are not persuaded by Husband's assertion that the specific cash payment to Wife identified in the agreement somehow casts doubt on the meaning of the provision concerning the military pension. The fact that the language concerning the cash distribution contained both a certain sum and schedule of payments does not prevent us from understanding the agreement as it pertains to the military pension.

In short, there is nothing contained within the language of the agreement itself supporting Husband's argument that the parties intended to limit Wife's entitlement to the marital share of the pension. The contract's

meaning can be ascertained by its plain language. The fact that Husband does not agree with the court's interpretation does not create an ambiguity. **See Pass**, **supra** at 5.

Next, we address and reject Husband's arguments that there is a latent ambiguity in the agreement concerning his military pension. The crux of this contention is that, since it is beyond cavil that only the marital portion of the pension was subject to equitable distribution, Husband's apparent agreement to give Wife a larger portion of his pension is illogical absent some extrinsic explanation. Although the concept of a latent ambiguity has been discussed by this Court in matters involving interpretation of contracts in family law cases,[3] the doctrine has largely been considered and developed in cases involving challenges to wills and insurance contracts. Nonetheless, the principles articulated in those matters guide us in determining whether there is a latent ambiguity in situations involving marital settlement agreements.

"Generally speaking, an ambiguity in a will must be found without reliance on extrinsic evidence; extrinsic evidence is admissible only to **resolve, not create**, an ambiguity." **In re Estate of Cassidy**, ___ A.3d ___, 2023 WL 3910447 at *4 (Pa.Super. 2023) (citation omitted) (emphasis added). "A latent ambiguity arises from collateral facts which make the meaning of a written document uncertain, although the language appears clear on the face of the document." **Id**.

---

[3] **See, e.g.**, **Krizovensky v. Krizovensky**, 624 A.2d 638 (Pa.Super. 1993); **Kohn v. Kohn**, 364 A.2d 350 (Pa.Super. 1976).

The most ordinary instance of a latent ambiguity is where an instrument of writing contains a reference to a particular person or thing and is thus apparently clear on its face, but it is shown by extrinsic evidence that there are two or more persons or things to whom or to which the description in the instrument might properly apply.

***Koplin v. Franklin Fire Ins. Co. of Philadelphia***, 44 A.2d 877, 879

(Pa.Super. 1945) (cleaned up).  For example, this Court has stated:

A latent ambiguity in an insurance contract may be one in which the description of insured property is clear on face of instrument, but there is more than one estate to which the description applies, or it may be one where property is imperfectly or in some respects erroneously described, so that description does not refer with precision to any particular object, and if such an ambiguity develops, extrinsic evidence is admissible to show intent of parties.

***Id***. (cleaned up).  In the context of challenges to wills, we have stated that

"[w]here a latent ambiguity exists, the court may resort to parol evidence

(such as testimony of the scrivener) to determine the decedent's true intent."

***Estate of Cassidy***, ***supra*** at *4.

We find that by his arguments, Husband attempts to use extrinsic

circumstances to **create**, rather than **resolve**, any latent ambiguity.  ***See id***.

The clear and unambiguous language of the agreement references with

precision the entirety of Husband's pension in describing the property subject

to Wife's forty-five-percent share.  Nonetheless, Husband devotes a significant

portion of his brief to identifying collateral matters to explain why he would

not have agreed to give Wife forty-five percent of his entire pension.  Put

another way, he tries to convince us of the parties' subjective intent, and why

it is contrary to the express language used in the contract.  However, it is not

the role of the courts to focus on subjective intent in interpreting clear agreements. **See Wert v. Manorcare of Carlisle, PA, LLC**, 124 A.3d 1248, 1260 (Pa. 2015) ("[W]here language is clear and unambiguous, the focus of the interpretation is upon the terms of the agreement as **manifestly expressed** rather than as, perhaps, silently intended[.]" (emphasis in original)).

The case *sub judice* is distinguishable from other matters where we have found a latent ambiguity. **See**, **e.g.**, **In re Estate of Schultheis**, 747 A.2d 918 (Pa.Super. 2000) (holding that the phrase "I give my shares of stock . . . as follows" in a will was latently ambiguous when the will specifically bequeathed 2,045 shares to named beneficiaries, yet it was determined that the decedent in fact owned 3,288 shares); **Kohn**, **supra** (ruling that the term "alimony" was latently ambiguous in a marital settlement agreement when (1) numerous express provisions in the agreement implied that "alimony" meant child support payments, (2) the definition of "alimony" typically did not concern payments for purposes of child support, and (3) there existed a supplemental agreement between the parties expressly reducing "alimony" payments if federal regulations permitting a tax deduction for such payments were changed); **Koplin**, **supra** (holding there was a latent ambiguity in a contract disparately insuring two chicken houses on a property, where the agreement only labelled them as Chicken House No. 1 and Chicken House No. 2 and where the parties disputed which provision applied to the single chicken house that burned down).

The common thread in these cases is that some external fact is required to clarify a provision because a description was inadequate, or a term was used in contravention to its ordinary meaning or definition. However, that is not what Husband advocates for in the instant matter. This is not an instance where the marital settlement agreement inadequately described the military pension so that there was confusion as to what was being addressed. Similarly, the parties here did not use some distinct term in contravention to its customary meaning, triggering a need for information to be found outside the four corners of the contract. Husband's position really amounts to an attempt to re-write the agreement, one we find clear and unambiguous, to include new terms that were never identified therein. That we cannot do. **See Vaccarello v. Vaccarello**, 757 A.2d 909, 914 (Pa. 2000) ("When the terms of a written contract are clear, this Court will not re-write it to give it a construction in conflict with the accepted and plain meaning of the language used.").

Since the trial court correctly determined that the marital settlement agreement is clear and unambiguous, it did not err in denying Husband's petition for special relief or his exceptions to the master's report and recommendation.

Order affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2023